No. 6580.

SARAH AND AUSTIN WOOLFOLK VS. MRS. EMILY WOOLFOLK.

The parish court is without jurisdiction of a suit for partition between the surviving widow and the heirs of the decedent, when it appears that the widow had accepted and disposed of her interest in the community, and that the heirs, who are of age, had unconditionally accepted the succession and been put in possession of its property. In such a case the succession no longer exists.

No intervention can be filed in a suit for a partition, after judgment decreeing the partition has been rendered. That judgment is definitive, and hence the suit can not be considered as pending until the final decree homologating the partition.

Parties who intervene in a partition suit can not be considered as third opponents to the execution of the judgment in the suit, unless they either claim to be owners of the property on which the judgment is sought to be executed, or claim a preference on the proceeds of its sale.

A suit for the nullity of a judgment can not be brought by way of intervention, or third opposition. It must be brought in the ordinary form, by petition and citation.

No valid judgment can be given in a proceeding wherein no citation issued to, and no answer, or appearance was made by the defendant.

APPEAL from the Parish Court of Iberville Parish.  *Cole, J.*

*Merrick, Race & Foster,* and *Samuel Matthews,* for plaintiff and appellees.

*Semmes & Mott, A. S. Herron,* and *Barrow & Pope,* for intervenors and appellees.

The opinion on the original hearing was delivered by MANNING, C. J., and on the rehearing by SPENCER, J.

MANNING, C. J.   Elise Labauve, Joseph Hernandez and others, judgment creditors of Emily Woolfolk, have appealed from a judgment of the Parish court of Iberville, dismissing their interventions wherein they seek to annul the decree of partition rendered by that court, and oppose the homologation of the proceedings founded upon it.

As our opinion is based upon the incompetency of the Parish court to render the decree of partition, we shall confine our recital of the facts to those bearing upon the question of jurisdiction.

Austin Woolfolk the elder died on 20th. of February 1847, owning property in Maryland, Tennessee, and Louisiana. He left five minor children, issue of his marriage with the defendant, to wit, Samuel who died prior to May 2 1861, unmarried, intestate, and without issue:— Joseph B. Woolfolk, Louisiana T. Woolfolk, Austin Woolfolk, jr. and Sara Woolfolk. He bequeathed to his wife and minor children his property in Louisiana, to be held by them as they would have held it under the law of Louisiana, had he died intestate. The defendant, their mother, was confirmed as their natural tutrix by the proper court of Iberville parish on 26th. of February 1847, that parish being the domicil of the decedent. On 2nd of May 1861, the surviving children (Samuel being dead) were either of age, or had become *sui juris* by dispensation from the disabilities of minority through judicial emancipation.

At the close of the war in 1865 Emily Woolfolk had become pecuniarily embarrassed, as was also Joseph B. Woolfolk, the eldest son. Judgments for large sums had been obtained against her, and were duly recorded in the proper office of Iberville parish, and operated as judicial mortgages on the Mound plantation in that parish. That property being thus incumbered, Emily Woolfolk, by notarial Act of 20th. September 1865, sold to her son Austin all her community interest, and all the succession rights which she had inherited from her deceased son Samuel, in and to the property inventoried in the succession of her hus-

Woolfolk vs. Woolfolk.

band, also deceased, and on the same day, Joseph B. Woolfolk sold to the same party all the succession rights, inherited by him from his father, and from the deceased Samuel. The inscription of the judgments of Hernandez and other opponents was anterior to the sales, and whatever consequences followed from these judicial mortgages, the sales did not include, nor did they divest the defendant of her usufruct, as surviving widow in community, of that half of the community property which belongs to the children. She owned the other half absolutely. The judicial mortgages affected both of these interests.

John Patrick, an adopted son of the elder Woolfolk, and Austin recovered judgments against Emily Woolfolk on 11th May 1866, the former for $2442.70 and the latter for $8424 with interest, and issuing executions upon them, seized and sold the usufructuary interest of the defendant in the community property, and became the purchasers thereof, each in proportion to his respective judgment. On 21 January 1869, John Patrick sold the usufructuary interest thus acquired to Austin Woolfolk, who thus becoming owner of the entire usufruct of his mother, sold to his sisters Sara and Louisiana on 10th. February 1869, one undivided third thereof to each. Austin and the two sisters thus became owners in equal parts of the usufruct.

But before the purchase of the defendant's usufructuary interest by Patrick and Austin, she had made a lease on 1 March 1866 to Patrick of the Mound plantation for four years from 12 January 1866, which remained in force until the same month of 1868, when it was rescinded by mutual agreement.

On the 9th. of November 1866, the Woolfolk children, including Joseph, instituted suit against their mother as executrix to compel her to account for her administration of the succession, and they also prayed to be decreed the owners of an undivided half of all the property of the succession situated in Iberville parish, and of one half of the sum due from her to the succession for moneys received from the proceeds of sales of property, and from other sources, which they alleged was $86,015. They also claimed a tacit mortgage on the immovable property of their mother to date from 26th. Feby. 1847. Judgment was rendered against her without opposition, and it was decreed that Austin, and his sisters Sara and Louisiana, were the owners of one undivided half of the property inventoried in the Succession proceedings in the following proportions, viz Austin was owner by inheritance and by purchase of 42–160ths—Louisiana and Sara by inheritance, each of 19–160ths.

This decree also adjudged that these three, and Joseph, recover of their mother $39,877.57, each, his or her virile share, and that their legal mortgage, securing that sum dated from 20th. Feby 1847, and operated upon all of the defendant's property that was susceptible of mortgage.

Zenon Labauve, a judgment creditor of the defendant, having recorded his judgment on 3rd June 1865, and thereby acquired a judicial mortgage, appealed from this decree, in so far as it allowed the legal mortgage above mentioned, and this Court reversed the judgment *quoad* that mortgage, and declared that the only effect of a judgment upon this demand of the children in that suit was to close the administration by Mrs. Woolfolk as executrix, and fix the amount in her hands as usufructuary.   Woolfolk v. Woolfolk, 20 Annual, 513.

This decision appears to have been unsatisfactory to all the parties to that suit.   On the 10th. of February 1869 they entered into an agreement, wherein Mrs Woolfolk renounced the benefit of the plea of *res judicata* so far as the legal mortgage asserted by the children against her in that suit was concerned, and in consideration of $2000, she transferred to them whatever usufructuary rights she possessed, recognized the validity of the judgment of this Court so far as it fixed the sum of money due by her, and consented to an immediate judicial partition of the common effects.   This agreement divested her of her usufructuary rights on and in the amount of the monied judgment recovered against her by her children, and she had been previously divested of these rights on all the residue of the community property by the judicial sale under the executions of Austin Woolfolk and John Patrick, and by the sale to Austin of 20th. Sept. 1865 she had divested herself of all interest as owner of her half of the community property, or as heir of her deceased son Samuel.

Having thus prepared the way for a partition, the suit to effect it was suspended until 7th. of June 1869.   In the meantime however, viz on 1st March of that year, the defendant and her son Austin rescinded the sale of 20th Sept. 1865.   She returned, or professed to return to him, the original consideration of that sale, $14,532, and the motive inducing the rescission is stated in the Act to be ignorance of the nature and extent of the incumbrances on the property existing at the time the sale was made.

Having thus re-invested their mother with the ownership of one half of the community property, and her share in the succession rights of her deceased son Samuel, this suit for partition was instituted on 7th. of June 1869 in the Parish Court for Iberville by Austin Woolfolk and his two sisters Louisiana and Sara.   Joseph B. Woolfolk was not a party thereto, although interested as co-proprietor of the judgment for over thirty nine thousand dollars, recovered against the defendant as executrix, already mentioned.

The plaintiffs in this partition suit allege that the defendant had received in cash $83,952.76, and that therefore she should take in the partition less that sum, and the remaining property should be sold to

equalize the lots. They allege that the defendant, as partner in community, was entitled to one half, or 80–160 parts of the common property, and as heir of Samuel to 4–160 parts thereof—that Austin was entitled in his own right to 16–160 parts, and as heir of Samuel to 3–160 parts, and as assignee of Joseph to 16–160 parts, and that Louisiana and Sara were each entitled to 19–160 parts. They pray for a judicial partition of the common property, and also of the sum of $83,952.70 due by their mother, and further for recognition of a legal mortgage in their favor on all the property of their mother that was or is susceptible of mortgage.

The defendant permitted judgment by default to be entered against her, and there was a decree for a partition, and requiring the notary to take into consideration as part of the entire mass, the sums of money received by the defendant from sales of property, and from other sources. These sums constituted the amount of $83,952.76 above stated.

The common property was advertised for sale, and it was enjoined by the creditors. Pending the litigation Austin Woolfolk died, bequeathing to his mother all she was entitled to receive as his forced heir, and the remainder of his estate to his brother Joseph and his two sisters. Although Joseph thus became interested in the common property, he was not made a party to the partition suit, nor was Austin Woolfolk's succession represented except through a testamentary executor.

At this juncture, the injunction which had delayed the sale was dissolved, Woolfolk v. Woolfolk, 24 Annual, 282, and the common property was sold on 3rd. December 1874 for twenty-five hundred dollars. It was appraised for a much larger sum. The purchasers were Joseph and the two sisters in equal undivided shares. On the 5th. of same month the notary made a partition, whereby the hitherto common property was allotted to the plaintiffs in this suit and the defendant was settled with by allowing her credits on her indebtedness to her children.

At this stage of the proceedings, Mrs. Labauve and other judgment creditors filed interventions, and opposed the homologation of the partition on various grounds, and among them, that the partition was null and void *ab initio* for the reason that the succession of Austin Woolfolk the elder had been closed long prior to the institution of the suit—that the heirs, all being of age, had accepted the succession unconditionally, had entered into possession of the common property, and that they held it as co-proprietors with their mother, who had also accepted the community, and therefore the Parish Court had no jurisdiction of the partition suit.

The petition for emancipation of the minors—the sale from Joseph

Woolfolk vs. Woolfolk.

to Austin—the lease and its rescission—the sale from Mrs. Woolfolk to Austin and its rescission—the suit of the children against their mother for an account of her administration of the succession, and the judgment rendered in that suit—all show that the succession of Austin Woolfolk the elder was closed, and that the parties had taken possession of the property, and disposed of it as owners. And this being true, it was no longer a succession that was sought to be partitioned, but common property of several owners of large value, and the Parish Court had not therefore jurisdiction of the suit for partition.

If the Court had no jurisdiction to decree a sale for partition, it is manifest that the purchasers at the sale made under that decree acquire no title therefrom. If they have any title, it can only be by the voluntary transfer of the parties, and hence none of the effects flowing from a judicial partition are produced. It is true that Mrs. Woolfolk, the defendant, may be estopped from questioning the validity of the sale, because she allowed the decree to be executed. It is also true that Joseph B. Woolfolk, who became a joint purchaser with his sisters, may be precluded from attacking the partition proceedings, but these estoppels operate against them, and have no greater effect than voluntary transfers. They do not change the character of the partition. They can not make that a judicial partition, which derives its force and effect from their consent alone.

It follows that the judicial mortgages of the opponents have not been displaced by the sale under the decree for a partition, and have not been transferred from the property to the proceeds. And therefore,

It is ordered, adjudged, and decreed that the judgment of the lower court is avoided and reversed, and that there be now judgment in favor of the Intervenors maintaining their oppositions and interventions, and dismissing the suit for partition at the costs of the plaintiffs therein.

---

### On Rehearing.

Spencer, J. The facts in this case, so far as detailed in our former opinion, need not again be repeated. In that opinion we held that the parish court of Iberville was without jurisdiction, *ratione materiæ*, in the matter of the partition in this cause, for the reason that the widow having accepted and disposed of her community interests, and the heirs being of age having unconditionally accepted the succession of Austin Woolfolk, Sr., taken actual possession of its effects without opposition, after a decree recognizing their respective rights and liquidating their claims against the widow executrix, there was no longer a succession to be partitioned. We see no reason at present to change our opinion as

then expressed, but in the view we now take that question need not be considered.

In the application for rehearing there have been pressed upon our attention preliminary questions of practice which did not receive our consideration before. The decree of partition in this case was rendered in 1869, fixing the respective rights of the co-proprietors in the property, settling the accounts between them, ordering a sale to effect the partition, and referring the parties to a notary. In August, 1874, Mrs. Labauve, Hernandez, and the Union Bank, claiming to be judicial mortgage creditors of the Widow Emily Woolfolk, defendant, filed a third opposition to regulate the effects of the sale as to themselves and claiming the proceeds of her share by preference. The sale for partition took place December, 1874, and was immediately followed by a notarial act of partition. No proceeding for homologation appears ever to have been taken. In April, 1875, Mrs. Labauve and the other opponents dismissed as in case of nonsuit their said opposition, and on same day filed another proceeding, styled an amended opposition and intervention, in which they oppose any homologation of the partition (no proceeding to homologate, however, was pending), and pray that the judgment of partition and all proceedings thereunder be annulled for want of jurisdiction *ratione materiæ* in the parish court, etc. Copies of this "intervention and opposition" were served on plaintiffs and defendants, but no citations were issued. So far as appears, there was never any judgment by default entered upon this intervention against the defendants therein, nor was it ever put at issue by any appearance or answer. The minutes show, however, that the matter was assigned for trial, without objection so far as appears, and that a mass of evidence was offered by the parties *pro* and *con*, the trial consuming several days. There was judgment defintively dismissing "the intervention and opposition," and from that judgment this appeal is taken.

Under this state of facts, it is material to inquire what was the nature and character of this proceeding by Mrs. Labauve and others.

First—Was it an intervention, and if so was it in due form of law?

Second—Was it a third opposition and in due form of law?

Third—If neither an intervention or third opposition, was it an action of nullity or revocation, and in due form?

Fourth—Where the law requires that suits be brought in the ordinary form, by petition and citation, and that they be put at issue by default, or by appearance and answer, can parties waive these forms of law, *in toto*, and try a case without any issues being legally formed?

First—In the nature of things and by express letter of the law, C. P. arts. 389 and 391, intervention is permissible only whilst the suit is pending between plaintiff and defendant. If the suit has terminated

and judgment has been rendered, no intervention therein is possible. It is urged, however, on the authority of Stokes' vs. Stokes, 6 N. S. 350, that a suit for partition is only terminated by the decree of final homol-gation, and that the judgment decreeing the partition, fixing the rights of ownership of the parties, and adjusting the collations between them is only interlocutory.

We think that the weight of authority as well as of reason is against the dictum of Stokes vs. Stokes. We consider that case overruled by Traverse vs. Rose, 10 L. R. 500; 11 L. R. 494; McCullom vs. Palmer, 1 Rob. 512; Blanchard vs. Blanchard, 7 An. 529, and other cases subsequent.

We are at a loss to understand why a judgment rendered upon issues regularly formed by petition and answer, passing upon the titles of the litigants, decreeing their respective portions in property, and fixing their indebtedness to each other, wants any of the essentials of a definitive decree. The rule or motion to homologate a partition when made is in some sort a new proceeding, requiring notice to the parties, and to be followed by another decree. We do not understand that upon trial of such rule one can again bring into question the matters adjudicated in the original judgment of partition; but the contest is confined then to things done in execution of it. It is doubtless true that until this decree of homologation and confirmation is rendered the partition can not be regarded as or have the effect of a judicial partition; but that does not prevent the decree of partition, in so far as it adjudicates upon the rights of the parties, as between themselves, from being final.

In this case, the decree of partition having been rendered long before the so-called intervention, and no proceeding for homologation being pending at the time it was filed, there was no suit, and therefore there could be no intervention.

Second—Nor can their demand be considered as a third opposition to the execution of the judgment of partition. Such opposition is permissible only in two cases—

1. When the decree is being executed upon property of which opponent claims to be the owner;

2. When opponent claims preference on the proceeds of sale. C. P. 396 et seq.

The parties do not occupy either position, and are not, therefore, their opponents.

Third—The demand is in fact one in nullity or revocation of the decree of partition. As such it should have been brought in the ordinary form, by petition and citation.

C. P. Art. 610. — "The party praying for the nullity of a judgment, before the court which has rendered the same, must bring his

action by means of a petition; and the adverse party must be cited to appear as in ordinary suits."

Fourth—" The joining of issue is in fact the foundation of the suit. * * * It is only after this is done that the suit begins." C. .P. 359.

" Judgments may be annulled if the defendant has not been legally cited, and has not entered appearance, joined issue, or had not a regular judgment by default taken against him." C. P. 606, No. 4. See, also, 2 L. 171 ; 7 N. S. 285 ; 10 An. 147.

We are not prepared to say, in the presence of these provisions, that in courts of record, as ours are, parties can by silence waive and dispense with these essential legal forms, and try cases, as it were, without forms or pleadings. To tolerate such practice would be to strip judicial proceedings of all certainty, and render insecure property and rights resting upon judicial titles and decrees, and would lead to infinite confusion.

We think that the orderly conduct of judicial proceedings, as well as the public interest, require that we adhere to the rules of the Code and of the jurisprudence. The proceeding of Mrs. Labauve and the other so-called intervenors should have been dismissed as in case of nonsuit, being improperly brought and never put legally at issue.

It is therefore ordered and decreed that the judgment heretofore rendered by this court be set aside ; and it is now ordered that the judgment appealed from, dismissing said (intervenors') demands (definitively) be reversed ; and it is now ordered that the same be dismissed as in case of *nonsuit;* appellees paying the costs of appeal, and appellants those of the court below.