# CHRISTIAN J. ZEITINGER et al. v. HARGADINE-McKITTRICK DRY GOODS COMPANY, Appellant; CHARLES A HOUTS, Intervener.

### In Banc, April 28, 1923.

1. **CONSENT JUDGMENT: Receivership: Employment of Attorney: Stipulation for Compensation.** Where a receiver for a dry goods company had been appointed, and the company had appealed, and the judgment was reversed and the cause remanded upon a stipulation that the costs to be paid out of the estate in the hands of the receiver "shall include reasonable compensation to the attorneys for the appellants, and also the compensation due plaintiff's attorney for their services," such stipulation was not an agreement for a consent judgment in behalf of an attorney who, about the time or just after the receiver was appointed, rendered services to said company in an effort to have it adjudged a bankrupt, in order to avoid the heavy expenses and large allowances for attorneys which it was thought would be incurred by the receivership, and who was not an attorney of record for the company in the receivership proceeding, although he rendered said services at the instance of the company's directors, and was recommended to them by the attorneys who represented the company in both courts.

2. **INTERVENTION: Civil Law Remedy.** Historically intervention is foreign to common-law and equity jurisprudence. So far as employed in the United States it has been borrowed from the civil law.

3. ———: **Appellate Jurisdiction: Allowance of Five Thousand Dollars to Intervener: Action at Law Engrafted on Equity Suit.** Whether the Supreme Court has jurisdiction of an appeal from a judgment allowing an intervener in a receivership proceeding five thousand dollars for his legal services, rendered a dry goods company, upon a contract, about the time a receiver for it was appointed, in an effort to have it adjudged a bankrupt, is a close question; but prompted by a purpose to speedily dispense justice without fixing a precedent for the disposition of like cases, which will remotely or ever arise, the court proceeds to decide the case on its merits.

    *Held*, by RAGLAND, J., dissenting, with whom JAMES T. BLAIR, J., concurs, that in no proper sense is this proceeding an intervention; that it does not grow out of any issue adjudicated

in the original suit in equity, in which it purports to be an intervention but is simply an action at law attempted to be engrafted by consent upon said equity suit, with which it is not only collateral, but wholly independent and unrelated; that appellate jurisdiction in the equity suit cannot therefore draw after it jurisdiction of this appeal, and that being the only possible ground on which the jurisdiction of this court can be predicated, the cause should be transferred to the proper court of appeals.

4. ———: **Timeliness: Laches.** Intervention, upon a contract for services rendered, by a person not a necessary party to the original proceeding, being at law, and being a pleading or action brought in a suit "pending between others," must be timely interposed, for a suit cannot be said to be pending when the issues have been judicially determined and judgment rendered.

5. ———: ———: **Waiver.** Unusual delay on the part of an intervener in bringing his action is waived by the adversary party proceeding to trial upon the merits without objection.

6. **APPELLATE PRACTICE: Action at Law: Extent of Review.** In an action at law, tried by the court sitting as a jury, in which no declarations of law were asked or given, the only questions for review upon appeal are errors on the face of the record proper and whether under the facts the respondent made out a prima-facie case; and in such situation, the judgment will be affirmed if upon any reasonable theory of the law and facts it can be sustained.

7. ———: ———: **Substantial Evidence: Weight.** If there was substantial evidence tending to establish the contract sued on by intervener and the allowance made him for his services rendered thereunder, the appellate court will not further consider the weight of the evidence on those issues.

Appeal from St. Louis City Circuit Court.—*Hon. Vital W. Garesche,* Judge.

Affirmed.

*Nagel & Kirby* and *Charles P. Williams* for appellant.

(1) The overwhelming preponderance of the evidence showed clearly that the contract made by the Hargadine-McKittrick Dry Goods Company with intervener

was a contingent one. If Mr. Houts were successful, he was to receive a generous fee; if not successful, he was to receive no fee at all, or, at most, a nominal fee and reimbursement for his expenses. Mr. Houts was not successful, and, therefore, was entitled, at most, to only a nominal fee. (2) This being an equity case, it is the settled practice in this State that the appellate court can review the evidence, and where the finding of the chancellor is against the decided preponderance of the evidence, can reverse his finding and judgment and enter its own judgment as in justice and equity should be entered. Daudt v. Steiert, 205 S. W. 222; Cohron v. Polk, 252 Mo. 281; Gottfried v. Bray, 208 Mo. 663; Glasgow Milling Co. v. Burns, 144 Mo. 196; Blount v. Spratt, 113 Mo. 54; Benne v. Shnecko, 100 Mo. 257. (3) The fee of five thousand dollars allowed by the court was not a nominal fee, but was (according to the petitioner himself) the reasonable value of the services rendered. While the court may give proper weight to the testimony of experts, it may disregard the same, and in a case of this character, the court it self is an expert on the question of attorneys' fees. The sum awarded is twice the amount intervenor placed upon his services when he sent his bill on February 8, 1919, after all of his services had been rendered.

*Charles A. Houts* and *Randolph Laughlin* for respondent.

(1) When there is no exception saved, objection to the judgment's waived. St. Louis v. Brooks, 107 Mo. 383; Johnson v. Terminal Ry. Co., 232 S. W. 239. (2) When the exceptionless appeal, they're like a worm beneath the heel. No matter how they writhe and squirm, the court will certainly affirm. O'Hara v. Berthold, 204 S. W. 1089; Everett v. Butler, 192 Mo. 564; Wallace v. Libby, 231 Mo. 341; Parkyne v. Churchill, 246 Mo. 109; State v. Morgan, 268 Mo. 265. (3) Appellant's case ain't worth a nickel; for reason, see Pickel v. Pickel, 176 Mo. App. 673, 677. (4) So here. Accept appellant's

case at its full value; on its face, it shows a lot of idle chatter—mere persiflage, devoid of matter, and futile, till the corporation takes note of the ·alleged oration, and writes "accepted" on its minute. This failing, there is nothing in it. See McCreery v. Garvin, 39 S. C. 375.

WALKER, J.—This is an appeal from the finding and judgment of the Circuit Court of the City of St. Louis, allowing the intervener, who is the respondent here, the sum of $5,000 for his services rendered as attorney to the· Hargadine-McKittrick Dry Goods Company. The services consisted in the efforts of the intervener to have the company at the instance of its directors, declared a bankrupt about the time or just after a receiver had been appointed for the company by the Circuit Court of the City of St. Louis. Subsequently the receivership proceedings were pending upon an appeal by the company before the Supreme Court as of the April term, 1918. Before this appeal was determined the respective parties upon stipulations filed in the Supreme Court agreed to a reversal and remanding of the case. After the entry of this order and while the mandate issued by the Supreme Court had not been fully complied with by the St. Louis Circuit Court, this proceeding by the intervener was begun by the filing of a petition for the allowance of his compensation as attorney aforesaid. The issue as stated by the Dry Goods Company, the appellant here, is embodied in an inquiry as to what were the terms of the intervener's employment. He contends that there were no specific terms. The Dry Goods Company contends that there was a definite agreement in regard thereto. That if he were successful he was to receive a generous fee; if he failed he was to receive nothing or at the utmost but a nominal fee; that all of his outlays incurred in behalf of the undertaking, including traveling expenses, were to be paid by the company. He was unsuccessful and was reimbursed as to his expenses.

The evidence showed ·that at a meeting of the board of directors of the Dry Goods Company, January 6, 1917,

the intervener appeared and explained to the board his plan for having the company adjudged a bankrupt, although at the time or thereabouts the State Circuit Court had indicated its purpose to appoint a reeciver to take charge of the affairs of the company. It appears that the intervener · was recommended to the board by Messrs. Kirby & Collins, attorneys who had represented the company in its litigation in the Circuit and Supreme courts. The alleged purpose in having the company adjudged a bankrupt, notwithstanding the proceedings in the circuit court, was to avoid the heavy expenses, large allowances for attorneys, etc., which it was thought would be incurred by the receivership.

According to the testimony of four of the members of the board of directors the understanding with the intervener' was as above stated.

The terms of the agreement as testified to by the members of the board of directors is opposed by the testimony of the intervener and a variety of facts and circumstances connected with the transaction is introduced as corroborative of his testimony. Upon this testimony, discussed later, the issue was determined.

The case was tried upon its merits before the court, neither party demanding a jury, as ancillary to the receivership proceedings, resulting in a finding in favor of the intervener in the sum of $5,000. From this judgment an appeal was perfected by the Dry Goods Company to this court.

I. The motion to dismiss the appeal filed by the respondent, intervener, in this court, states not too clearly the grounds for same as being based upon certain provisions in the stipulations filed in the Supreme Court as of February 3, 1919, by the parties to the receivership proceedings, which other things provide that: "These costs shall include reasonable compensation to the receiver for his administration of the estate, with that of the referee, and the attorneys for the appellants, together with all

Stipulation for Consent Judgment.

reasonable attorneys' fees and other costs or expenses, which the receiver had incurred in the administration of this estate, and also, the compensation due plaintiff's attorneys for their services, and after the same have been taxed, they are to be paid out of the corpus of the estate in the hands of the receiver. . . .

"That this cause be remanded to the trial court for the purpose of entering a judgment dismissing the cause, as per the stipulations of the parties, and for the making of such further orders and entries as may be necessary to dispose of the litigation in the circuit court, as is provided by this and other stipulations, and for no other purpose, and that a mandate be issued out of this court accordingly."

And in addition, as supplementing the foregoing grounds, there are set forth certain portions of the mandate of the Supreme Court as of February 5, 1919, based upon the foregoing and other stipulations directing the circuit court: "To tax against the appellant" (The Dry Goods Company) "all costs, including reasonable compensation to the receiver for his administration of the estate of the appellant, together with all reasonable attorney's fees and other costs or expenses which the said receiver has incurred in the administration of the estate, and also the compensation due plaintiff's" (respondents in the receivership proceedings) "attorneys for their services, with disbursements, and the compensation due the referee and the attorneys for the appellant for their services, with disbursements, and to order all costs paid as and when allowed, out of the corpus of the estate now in the hands of the receiver, and to make such further orders and entries as may be necessary to dispose of the litigation and the estate in the said circuit court, in accordance with said stipulations of the parties filed in this court, and those heretofore executed and to be filed in said circuit court, and thereupon to dismiss the plaintiff's" (respondent's) "petition herein, in accordance with the said stipulations."

Other portions of the stipulations not cited by respondent here in support of his motion to dismiss the ap-

peal are necessary to a determination of the meaning of the foregoing. In a stipulation filed in the circuit court January 30, 1919, it is provided that the word "Plaintiffs" (as used in the receivership proceedings) means both the original plaintiffs and the interveners.

It is further provided in effect in said stipulation that upon the receipt of the mandate from the Supreme Court reversing the case two trustees shall be selected, one by each of the attorneys of the respective parties, who shall hold the assets until the performance of these stipulations and disburse same as may be directed; that plaintiffs' attorneys shall submit their claims for compensation to the circuit judge who heretofore heard their claims in that behalf and he shall determine the amount of their compensation from the evidence heretofore submitted to him for consideration and now preserved in plaintiff's bill of exceptions on file, and from the abstracts, briefs and other documents in the Supreme Court, and on the basis of the decree having been affirmed. The said judge shall, thereupon, determine from said evidence the allowance to which plaintiffs' attorneys are entitled, and his findings shall be incorporated in an order making said allowance and the same shall be final and binding on all parties concerned, including the trustees, and shall be forthwith paid by said trustees out of the corpus of the estate as soon as the attorneys of plaintiffs shall deliver to said trustees written evidence from plaintiffs of their authority to enter into and consummate the settlements, which are sought to be effected by this, and the two other stipulations, of even date herewith.

In the foregoing stipulation the intent is clearly evident that the allowances authorized to be made to the attorneys for plaintiffs and interveners (who at that time could only have meant the complaining stockholders) had reference to appellants and interveners in the main case and it was in that sense that the allowances were to be final, i. e., not subject to review; and that in the making of such allowances the judge named was to act as an arbitrator, not in the exercise of a judicial function.

The latter intent appears from the selection of the judge named who was not then a judge of the division of said circuit court in which the receivership proceedings were pending, and also from the naming as his substitute the then judge of the probate court and not the judge of any division of the circuit court. The one acting was therefore only in the capacity of an arbitrator.

The stipulation dated February 3, 1919, supra, quoted in respondent's motion to dismiss the appeal, provided in part that the costs which were directed to be paid by appellant (The Dry Goods Company) were to include the allowances of compensation to the attorneys for said company.

The intent is not there expressed as it was in relation to the allowances to be made to the attorneys for the stockholders, that the fees to be allowed to attorneys for the company should be final, nor is it provided that the presiding judge of a division of the circuit court shall act as an arbitrator rather than in his judicial capacity. The intent, therefore, was that he was to act as the judge of said court.

The intervener was not an attorney of record for the company in the receivership case, and his intervening petition herein shows that he claims an allowance as one of the attorneys for the company for services claimed to have been performed later than the receivership proceedings, for which purpose, upon the theory here entertained by all parties to this proceeding, it was necessary for him to intervene. This being true under the stipulations quoted and the mandate, the allowance appealed from by the company was not a consent judgment, nor was it based upon the decision of an arbitrator.

It was the final judicial determination of a collateral cause of action, viz., the issues of fact and law submitted by the intervention and the appellant's answer thereto, and such final judgment disposed of the subject-matter at issue as between all the parties thereto.

In another stipulation, also dated January 30, 1919, it is provided in effect that the costs in the case, exclud-

ing compensation of plaintiff's attorneys, shall be taxed by the presiding judge of the circuit court; and that the compensation of plaintiffs' attorneys shall be ascertained as provided in a separate stipulation which is above set forth, provision being made therein for the manner of its payment.

Moreover, a pertinent circumstance which affords at least strong persuasive proof that the stipulations cited were not intended to include the intervener is the fact that not only his right of action did not exist when they were drawn and filed, but it was not within the realm of reasonable contemplation that such an action would arise. In this connection it may be noted that although the mandate in the receivership proceeding was filed February 5, 1919, intervener's suit was not commenced until March 19, 1921, or more than two years after the entry of the judgment in the principal case. When the action did arise and suit was brought, two issues in law were presented: one as to the existence of the contract upon which the intervener's right to recover was based; and the other as to the amount, if any, he was entitled to recover. Not only did these issues submit question of fact requiring proof, which was offered, but each was stoutly contested by the appellants. There is therefore no basis, except a tenuous technicality, to sustain the assumption that this case is illustrative of a consent judgment which did not authorize an appeal. Respondent's motion therefore to dismiss the appeal is overruled.

II.   The authorities discussing the right of intervention are irreconcilable when read aside from their settings. This is due in part to the fact that in some states the right has received express statutory recognition and the rules announced in such cases are of course limited to the powers conferred. In others a coloring is given to the conclusions reached upon the assumption that the proceeding sounds in equity and is governed by the well-defined rules of that system of jurisprudence. In others still the pro-

Right of
Intervention.

ceeding is regarded as so completely appendant to the principal action as to cause its character, whether in law or equity, to be determined therefrom. Interesting, however, as these reflections, drawn from many decided cases, might otherwise prove, we are concerned with them here only as the rulings made may apply in the determination of the matter at issue. As a matter of historical interest it may be said that intervention is foreign to common law and equity jurisprudence. So far as it has been employed in the United States whether with or without statutory recognition it may be said to have been borrowed from the civil law. It is tersely said in Hyman v. Cameron, 46 Miss. l. c. 727, in citing one of the most widely known works on practice, that: "Intervention is a civil law term, a pleading familiar in that system. It is the act by which a person, not originally a party, 'comes between them,' claiming an interest in the subject-matter and interposes his claim, which is generally adverse to one or both of the original litigants. It is unknown to the common-law courts of law and equity, but has been admitted in the practice of the ecclesiastical courts, which closely resembles that of the civil law. [2 Chitty's Gen. Pr. 492.]"

III. There is still a lingering doubt in the writers's mind, not removed by the suggestions of appellant's counsel, as to the jurisdiction of the Supreme Court in this action. The question, it must be admitted, **Appellate Jurisdiction.** is a close one. My associates tentatively incline to a final disposition of this case. Prompted therefore as they doubtless are by a purpose to speedily dispense justice without fixing a precedent for the disposition of like cases in the future, which will remotely, if ever, arise, the case will be considered on its merits.

There is no statute in Missouri on intervention. The nearest approach to one is Section 1275, Revised Statutes 1919, of our Code of Civil Procedure, concerning the bringing in of new parties. It is only by its terms applicable during the pendency of the action and before its

final determination.   While this section is clearly
<span style="margin-left:2em">**Laches.**</span> remedial and consequently to be liberally con-
strued, even to the extent, in an equity case, of
authorizing the appellate court, upon a reversal of the
case, to direct the joinder of necessary parties (O'Fallon
v. Clopton, 89 Mo. 284), that latitude cannot be exercised
here.   The intervener was not a necessary party to the
original proceeding and the intervention was not in equity
but in law, which we will discuss later.   Cases concerning
this question, in this jurisdiction, are few in number:
the discussions are meager and mostly incidental.   The
learning on the subject therefore embodying such prece-
dents as may aid in the determination of the questions
confronting us, may be sought elsewhere.   The very na-
ture of an intervention which we have defined as in the
civil law to be an action by which a third party becomes
a party in a suit pending between others (Smith v. Gale,
144 U. S. 509; In re Ghio's Estate, 157 Cal. 552, 137 Am.
St. 145, 37 L. R. A. (N. S.) 549;  20 R. C. L. sec. 20, p.
282), requires by its express terms timeliness of action on
the part of the intervener.   Otherwise the words author-
izing that his action be brought in a suit "pending be-
tween others" would mean nothing.   A suit cannot, with-
in a reasonable interpretation of the words as thus used,
be said to be pending when the issues have been judicially
determined or in short a judgment has been rendered
therein.   This action was not brought by the intervener
until after the stipulated judgment had been rendered in
the Supreme Court and the mandate directing the en-
forcement of same had, in all of its material features,
been complied with by the trial court.   The St. Louis
Court of Appeals in Morton v. Supreme Council, 100 Mo.
App. 76, held incidentally that motions to intervene not
filed until after judgment were properly overruled.   As
applicable to the instant case it was held by the Supreme
Court of Texas, 28 Tex. 254, that an intervention may be
allowed after the appointment of a receiver to take charge
of the funds in controversy.   The Supreme Court of
Louisiana in Woolfolk v. Woolfolk, 30 La. Ann. 139,

holds that intervention will not be permitted after the entry of an interlocutory decree in partition designating the interests of the parties. The general trend of the decisions on this subject will be found reported in notes to Brown v. Saul, a Louisiana case, 16 Am. Dec. 177, and to Walker v. Sanders, a Minnesota case, 123 Am. St. 280. They are to the effect that an intervention in the exercise of an intelligent discretion by the trial court, will not be granted where the intervener has been guilty of laches after knowledge of the pendency of the suit, if any part of same is thereby retarded, rendered nugatory or changes the position of the original parties to their detriment, although the original action has not resulted in a judgment. [Vide cases cited 123 Am. St. 295.] Only under circumstances where such intervention may be granted in furtherance of justice and in no wise affects injuriously the original litigants will it be granted after final judgment. But paraphrasing the words of the Sage of Concord: Of what avail do rules prevail if promptitude in action fail.

Despite the facts showing an unusual delay on the part of intervener in bringing this action it does not seem to have been stressed by the appellant before the trial and if so it was waived by the latter in proceeding to a trial upon the merits. If objections to an intervention be not made at the proper time they are waived. If a petition in that behalf is answered and the trial is had without objection, it is thereafter too late to question the validity of the proceeding. [McKenty v. Gladwin, 10 Cal. 227; Donner v. Palmer, 51 Cal. 629; Herman v. Pfister, 2 La. 456.] This was an action at law tried by the court. The issues to be determined were the terms of the contract, conceded to have been made, and the amount of the intervener's compensation. While a right to a trial by jury existed it was waived by the parties appearing, answering ready and participating in a trial before the court. [O'Day v. Conn, 131 Mo. 321; Gray v. Meddle, 80 Mo. 39; Boyce v. Howell, 210 S. W. (Mo. App.) 89.]

*Waiver.*

This being an action at law where no instructions were asked or refused the only questions for review are the errors, if any, on the face of the record proper and whether under the facts the intervener made out a prima-facie case. In other words the judgment will not be disturbed if upon any reasonable theory of the law and facts it can be sustained. [Davis v. Dawson, 273 Mo. 499; St. Joseph Hay Co. v. Railroad, 185 S. W. (Mo. App.) 1162; Equitable Life Ins. Co. v. Bank of Commerce, 197 S. W. (Mo.) 115; Bacon v. Theiss, 208 S. W. 254.] Without consuming time and space in reviewing the facts it will suffice to say that enough substantial evidence was introduced by the intervener, not confined to his testimony alone but measured in connection with that of certain lawyers for the appellant, as well as others, who were in one way or another cognizant of his employment, to sustain his contention, not only as to the terms of his contract, but as well the extent and value of his services. Furthermore some consideration in reaching this conclusion has been given to the finding of the trial judge, his opportunities for hearing the witnesses and determining the weight of their testimony being superior and more convincing than a perusal of the record alone.

*Appellate Practice.*

From all of which it results that the judgment should be affirmed and it is so ordered. All concur, except *Ragland, J.,* who dissents in separate opinion, and *James T. Blair, J.,* who concurs with *Ragland, J.*

RAGLAND, J. (dissenting).—As appears from the opinion of my learned associate, this proceeding is not in any proper sense an intervention. It does not grow out of any of the issues adjudicated in the original suit in equity, in which it purports to be an intervention, nor does it arise as a consequence of the decree therein. It is simply an action at law attempted to be engrafted by consent on the equity suit, with respect to which it is not only collateral, but wholly independent and unrelated. Appellate jurisdiction in the equity suit cannot therefore draw after it jurisdiction of the appeal in this. As that

is the only possible ground on which our jurisdiction can be predicated in this case, I am of the opinion that the cause should be transferred to the St. Louis Court of Appeals. *James T. Blair, J.*, concurs.