**SAN FRANCISCO TOMORROW et al.,**
**Plaintiffs,**

v.

**George ROMNEY, Secretary of Housing and Urban Development, et al.,**
**Defendants,**

and

**San Francisco Redevelopment Agency,**
**Intervening Defendant.**

**No. C–72–65 RHS.**

United States District Court,
N. D. California.

April 25, 1972.

---

5. Peyser v. General Motors Corp., 158 F.Supp. 526, 529 (S.D.N.Y.1958) (Kaufman, J.)

J. Anthony Kline, Public Advocates Inc., James Moorman, Sierra Club Legal Defense Fund, San Francisco, Cal., for plaintiffs.

Francis B. Boone, Asst. U. S. Atty., Michael DiSanto, San Francisco Redevelopment Agency, San Francisco, Cal., for defendants.

## OPINION AND ORDER

SCHNACKE, District Judge.

This case is before the Court on (1) plaintiffs' motion for a preliminary injunction seeking to halt, during the pendency hereof, the construction of two federally assisted urban renewal projects, one the Yerba Buena project in San Francisco and the other a somewhat similar, though less extensive, project in Berkeley; (2) defendants' motion to dismiss; and (3) plaintiffs' motion for summary judgment. The disposition hereinafter made will cover all of these.

The basis of the complaint is the alleged failure of the so-called "Federal defendants" to make an "environmental impact statement" of the character contemplated by the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332(2) (C).

The plaintiffs are a group of organizations alleging general concern for the condition of the environment and the welfare of society, and several individuals who claim residence in the vicinity of the projects involved. Plaintiffs claim no property or other legal interest in the projects or the properties included therein or adjacent thereto any greater than or different from that possessed by the citizenry at large.[1]

There are two paramount issues:

(I) Do plaintiffs have standing to maintain this action?; and

(II) At the present stage of the two projects involved and in the light of NEPA's provisions (including its effective date) is an "environmental impact statement" as to them required?

## (I)

■■ As to the issue of standing, it must be borne in mind that the courts do not sit, nor are they empowered, to resolve every dispute that anyone may wish to bring before them. This is especially true of the Federal Courts, whose jurisdiction is hemmed round by the Constitution and statutes of the United States. The Constitution creates a tripartite system of government and limits the courts to "cases and controversies" and to only such of those as to which they are expressly given jurisdiction by statute. Most importantly, they are not given general visitatorial jurisdiction over the other branches of government and their agencies, nor are they given jurisdiction, *sua sponte* or otherwise, to order the proper execution of every act of Congress. Litigants, counsel, and particularly Federal judges should always bear in mind the admonition of the then Mr. Justice Stone that "Courts are not the only agency of government that must be assumed to have capacity to govern." Dissenting opinion in United States v. Butler, 297 U.S. 1, 87, 56 S.Ct. 312, 329, 80 L.Ed. 477.

Growing public concern over the deteriorating state of the natural environment has led to several consequences of importance here: (a) the formation of numerous groups, such as certain of the plaintiffs herein, assertedly dedicated to protection and improvement of the environment and (b) the enactment by Congress of numerous laws, of which NEPA is perhaps the most striking, manifesting Federal concern with these problems and directing Federal action to deal with them.

Congress in such laws has manifested great concern for the deterioration of

---

1. Contrast the plaintiffs in Daly v. Volpe, 326 F.Supp 868 (W.D.Wash.), who were "individual residents and property owners in or near the proposed corridor of I-90". Plaintiffs place great emphasis on

Judge Beeks' March 31, 1972 reversal of his April 9, 1971 position in this case. Cf. Zlotnick v. D.C. Redevelopment Land Agency (D.D.C. March 3, 1972).

our cities and has passed various measures designed to assist local governments in their efforts to rehabilitate their slums and ghettoes and to provide decent housing and related facilities for their residents. Likewise motivated by ecological considerations, another important statute here involved is the Housing Act of 1949, and particularly, for present purposes, the part codified as Chapter 8A, Subchapter II thereof, 42 U.S.C. §§ 1450–1469c, entitled, "Slum Clearance and Urban Renewal", providing, among other things, for Federal assistance in projects of the type here involved.

While it is not necessary to base this decision thereon, the importance with which Congress viewed the Housing Act is manifested by one of its preliminary provisions, 42 U.S.C. § 1443:

> "Insofar as the provisions of any other law are inconsistent with the provisions of this Act, the provisions of this Act shall be controlling."

It is against this background that the Court must resolve the issues presented, beginning with that of the standing of plaintiffs to maintain their action. Actions by groups like plaintiffs have, in recent years, been legion. In this Circuit, the two leading recent cases are Sierra Club v. Hickel, 9 Cir., 433 F.2d 24, affirmed sub nom. Sierra Club v. Morton, 404 U.S. 814, 92 S.Ct. 39, 30 L. Ed.2d 44 (1972), and Alameda Conservation Association v. State of Cal., 9 Cir., 437 F.2d 1087, certiorari denied sub nom. Leslie Salt Co. v. Alameda Conservation Association, 402 U.S. 908, 91 S. Ct. 1380, 28 L.Ed.2d 649. Recent important Supreme Court decisions on the general subject of standing, in addition to the just-decided *Sierra Club* case, *supra*, include Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947, and Ass'n of Data Processing Service Organizations v. Camp, 397 U.S. 150, 90 S.Ct.

827, 25 L.Ed.2d 184. The issue of standing under NEPA has also been considered in a number of cases, principally on the District Court level. To review and attempt to reconcile them all would be fruitless if not impossible.

It would serve little purpose to review the whole line of cases regarding standing, going back at least to Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078, and beyond, since in a recent pronouncement, the Supreme Court has admonished us that "Generalizations about standing to sue are largely worthless." (*Ass'n of Data Processing,* *supra,* 397 U.S. at p. 151, 90 S.Ct. at p. 829.) Suffice it to say that neither Congress nor the courts has issued to any individual or association of individuals a roving commission to see that all laws of the United States are being properly enforced or administered. It appears that in each case where standing has been recognized, the plaintiff has borne some special relationship to the statute or to its subject matter, or to its enforcement, which distinguishes him from the common body of citizens. In some instances, as in the antitrust laws, Congress has expressly provided for private suits for enforcement and damages; in others, the right to sue has been extended to "persons aggrieved" by certain actions; in some situations competitors have standing; under rare circumstances, a mere taxpayer may have standing, but in most cases not, as *Mellon* clearly determined.

█ It is of some significance that no provision of NEPA contemplates general public involvement. It neither requires nor provides for public hearings in connection with the preparation of, or following completion of, the environmental impact statement.[2] Rather, it requires consultation with and obtaining the comments of "any Federal agency which has jurisdiction by law or special

---

2. Whether any such hearings are required in connection with proceedings of local agencies connected with the projects is, of course, a matter of local law not here relevant.

expertise with respect to any environmental impact involved" and the submission thereof to appropriate Federal, State, and local agencies. 42 U.S.C. § 4332(2) (C).

Plaintiffs have supplied the Court with affidavits from geologists, engineers, city planners and the like asserting the unfeasibility of the two projects involved. Nothing in NEPA even suggests that these are the proper concern of this Court or bear in the slightest upon the issues here to be decided.

■ In no instance to which we have been referred or which we have found has it been held that one with a mere non-pecuniary interest in the subject matter of a statute, or a general wish, desire or concern that a statute be enforced, has standing to sue thereunder. The Constitution tells us that the President ". . . shall take Care that the Laws be faithfully executed. . . ." (Article II, Sec. 3.) The defendants herein, and not plaintiffs, are those the President has appointed to assist him in carrying out that high mandate.

NEPA contains no provision for its enforcement. My colleague Judge Peckham has well said:

". . . it is highly doubtful that the Environmental Policy Act can serve as the basis for a cause of action. Aside from establishing the Council, the Act is simply a declaration of congressional policy; as such, it would seem not to create any right or impose any duties of which a court can take cognizance. There is only the general command to federal officials to use all practicable means to enhance the environment, 42 U.S.C. § 4331. It is unlikely that such a generality could serve or was intended to serve as a source of court-enforceable duties." Bucklein v. Volpe, No. 70–700 (N.D. Cal.)

To what extent and upon whose suit the courts may in some cases order compliance with it need not be decided herein. It is sufficient for purposes of this action to hold, as we do, that plaintiffs here do not have standing to maintain this action.

## (II)

There are, moreover, additional considerations which preclude plaintiffs, even if they had standing, from prevailing in this action. It is fundamental to their claims that NEPA be applicable to the two projects here involved. NEPA became effective on January 1, 1970. It is conceded that at that time the projects were in an advanced stage, at least as far as Federal approval or other Federal action was concerned.

As to the first, the San Francisco Yerba Buena project, in 1962 the Department of Housing and Urban Development (HUD) approved a planning grant in the sum of $693,797. In 1966, the agency approved an allocation to the project amounting to slightly over $31,000,000. Further funds for the project were approved by HUD on May 28, 1970, which covered about $3,000,000 worth of "amendatory" grants. On November 26, 1971, a further "amendatory" was approved for $14,000,000. The San Francisco Redevelopment Agency has recently asked for approval by HUD of an addition to the project, a hotel, not part of those plans earlier approved by HUD. Some demolition but little actual construction has begun on the project.

The Berkeley project was considered and approved by HUD in 1965. After an initial grant of $4,700,000 in that year HUD determined that the most desirable method of financing the project was on a year-to-year basis, such yearly grants having been approved on February 10, 1970 and June 3, 1971.

■ Nothing in NEPA indicates whether or to what extent it is intended to be applicable to projects undertaken prior to its effective date. It is an accepted canon of statutory construction that retroactive application is not favored. See, e. g., Claridge Apartments Co. v. C. I. R., 323 U.S. 141, 164, 65 S. Ct. 172, 89 L.Ed. 139; Del Guercio v. Gabot, 161 F.2d 559, 561 (9th Cir.).

There have been numerous District Court decisions and a few Court of Appeals cases on the applicability of NEPA to so-called "ongoing projects", i. e., those initiated prior to, and in progress on, January 1, 1970 and continuing thereafter. It would serve no purpose at this juncture to review each of these decisions in detail. If any consistent rule can be distilled from them, it is this: That if, subsequent to January 1, 1970, there is any significant departure from the original design having ecological significance or if, subsequent thereto, a design feature of ecological significance left open in the original design is resolved or one previously provided for is significantly changed, an "impact statement" must be prepared; absent one of these circumstances, NEPA is not applicable.[3] For example: If the general route of a federally-assisted highway[4] had been determined as of January 1, 1970, but it had not been determined at that time whether a portion of its route was to run through a park or alongside a railroad track, an "impact statement" must be prepared before it can be run through the park.[5]

In the present case all relevant design and planning phases of the two projects had been determined prior to January 1, 1970, and it does not appear that any changes thereafter made or contemplated require impact statements under the foregoing test. In any event, we hold that the changes occurring after that date were not such as to entitle plaintiffs to prevail, regardless of the abstract question of the retroactivity of NEPA under some other circumstance.

The motion to dismiss is granted and the complaint and action are dismissed.

3. This test is consistent with the fact that the NEPA provisions here involved apply only to "*major*" Federal actions significantly affecting the quality of the human environment". 42 U.S.C. § 4332 (2) (C). (Emphasis supplied.)

4. The vast majority of the cases, incidentally, have involved highway projects.

5. This was virtually the situation in Named Individual Members of San Antonio Conservation Society v. Texas Highway Department, 446 F.2d 1013 (5th Cir.), and is close to the situation in Calvert Cliffs' Coord. Committee v. United States A. E. Com'n, 449 F.2d 1109 (D.C.Cir.), two cases upon which plaintiffs strongly rely.