CITY OF BRIDGETON, a Municipal Corporation, Plaintiff-Respondent,

v.

NORFOLK & WESTERN RAILWAY COMPANY and Linclay Development Corporation, Defendants-Respondents,

Anne Englert, Intervenor-Appellant.

LINCLAY DEVELOPMENT CORPORATION and Earth City Corporation, Plaintiffs-Respondents,

v.

CITY OF BRIDGETON, a Municipal Corporation, Defendant-Respondent,

Anne Englert, Intervenor-Appellant.

Nos. 58772, 58773.

Supreme Court of Missouri, En Banc.

March 8, 1976.

Rehearing Denied April 14, 1976.

Lewis C. Green, St. Louis, for intervenor-appellant.

Shulamith Simon, Husch Eppenberger, Donohue, Elson & Cornfeld, St. Louis, for Linclay Development Corp. and Earth City Corp.

Albert E. Schoenbeck and Stephen M. Schoenbeck, St. Louis, for Norfolk & Western Railway Co.

MORGAN, Judge.

The initial and perhaps dispositive issue before this court is the right of one resident of the City of Bridgeton to intervene after entry of judgment in two lawsuits, consolidated for purposes of trial, wherein said city was a losing party and elected not to appeal. The trial court denied intervention.

Both cases arose out of a zoning dispute in said city involving land contiguous to the Earth City development project in St. Louis County. The city had rezoned certain land from residential to industrial use in order to permit the construction of a railroad spur to serve the Earth City area; and, Anne Englert, appellant—and would-be intervenor, is credited with organizing a successful referendum to force the city to rezone the land

in question from industrial back to residential use.

In No. 58,772, the city filed suit against Norfolk and Western Railway Company and Linclay Development Corporation to enjoin construction of a railroad spur through a portion of the city zoned residential and further requested a mandatory injunction to compel the removal of such part of the track as had been constructed. The spur was to serve an industrial tract outside the city.

In No. 58,773, suit was filed by Linclay and its affiliate, Earth City Corporation, against the City of Bridgeton seeking an injunction against enforcement of the ordinance and other relief. That portion of this case seeking an injunction against enforcement of the zoning ordinance was consolidated for trial with No. 58,772.

On June 20, 1974, the Circuit Court of St. Louis County entered a judgment to the effect that the only reasonable use of the land was for industrial purposes in light of the use of the surrounding lands; and, that the repeal by the city of the industrial zoning was "unreasonable, arbitrary, capricious and void," and that a residential zoning would constitute a denial of due process as to Linclay and Earth City Corporation.

On July 3, 1974, the City Council of the City of Bridgeton decided not to appeal and so instructed the City Attorney.

On July 5, 1974, Anne Englert filed a motion for leave to intervene in the consolidated cases. An evidentiary hearing was held on July 12, 1974, and arguments were made on July 16, 1974.

On August 13, 1974, the trial court denied her motion (in each case) and she has appealed.

Supreme Court Rule 52.12 reads, in part, as follows:

(a) *Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of this state confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In *Hobson v. Hansen,* 44 F.R.D. 18, 22 (D.C.1968), the court said:

Petitioner Hansen and a group of 20 parents seek to intervene as a matter of right pursuant to Rule 24(a), Fed.R.Civ.P. That rule, in relevant part, provides:

"Intervention of right. Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."

To intervene, then, petitioners must establish, first, that they have an interest in the proceeding, second, that they are "so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect" it, and, third, that their interest is not being adequately represented by existing parties. *And in seeking to intervene after final judgment, petitioners must meet an especially heavy burden.* For though the rule does not in terms distinguish between intervention before and after final judgment, post-judgment motions are rare and at this stage of the proceedings Rule 24 should generally be applied less liberally.

This is so because the rule is couched in terms of "timely application," which makes it appropriate to take into account the stage of the proceedings. (Emphasis added.)

The "interest in the proceeding" which Anne Englert seeks to establish is set forth in her brief as follows: "Appellant claims multiple interests in the subject matter of

this action. First, as a citizen of a suburban community; as a civic leader and Councilwoman of Bridgeton, representing the ward in which the subject property is located; as the leader (or one of the principal leaders) of the four-year fight to preserve the agricultural flood plain in Bridgeton and prevent excessive industrial development in Bridgeton; as a founder and Board member of a citizens' organization the purpose of which is to preserve a healthful, pleasant, residential, and open environment in Bridgeton, as a principal leader of the referendum drive which obtained the required signatures on referendum petitions, and then won the referendum vote by 2064 to 1686, thus overruling the City Administration; as a plaintiff in two lawsuits (now consolidated into one, *Coalition for the Environment, etc. et al. v. Volpe,* No. 72 C 32(1), United States District Court for the Eastern District of Missouri) to enjoin further development by Linclay and Earth City in the unincorporated area immediately south of the subject property; and as appellant in another lawsuit now pending in the Kansas City Court of Appeals (*Englert v. Public Service Commission,* No. KCD 26919), contesting the Public Service Commission's approval of Norfolk and Western's application for authority to construct a tunnel under St. Charles Rock Road, she has a dominant interest in preserving the validity and enforceability of Bridgeton's zoning ordinance, and particularly the zoning of the subject flood plain property (Tr. 269–72, 289). *Kellog v. Joint Council of Women's Auxiliaries Welfare Association, supra,* at 376–77. [265 S.W.2d 374 (Mo.1954)]  *  *

"Second, as a resident in a suburban community, she has an interest in maintaining the community as a community predominantly residential and suburban; in protecting herself, her home, her family and her life from the multifarious consequences of the proposed Earth City development, including the railroad noise she would hear in her bedroom and her front yard, the airborne dirt which would soil her curtains, linens, and clothes, as well as her lungs; in preserving her freedom to traverse the streets of Bridgeton without being stalled by the excessive traffic which would result from industrial development of the bottom land, and her freedom from additional taxes which would be required to provide additional streets and other services (police, fire, etc.) to serve the proposed development and the people it will bring to Bridgeton, and her freedom to walk or drive down to the river, past the Rock Industrial Park, through or alongside the agricultural bottom land, enjoying and inhaling its freshness, openness, and beauty; in preserving ner joy in living in a small community which is predominantly residential, with a limited balancing of industrial area, with a limited balancing of agricultural open space in the bottom land, in keeping with Nature's design, with fresh farm products available close at hand, grown locally. *Village of Belle Terre v. Boraas,* 416 U.S. 1 [94 S.Ct. 1536, 39 L.Ed.2d 797] (1974).

"Third, appellant alleged that the value of her property and the property of other class members would be substantially diminished by the proposed industrial development.

"Fourth, the combination of these interests, collectively, is more than sufficient to fulfill the requirements of Civil Rule 52.-12(a)(2)."

A review of the record made at the evidentiary hearing held on July 12, 1974, reveals that Anne Englert had knowledge of the two suits when they were filed; that she had prior knowledge the cases were coming to trial on June 19, 1974; that she was asked to testify in the case but did not (her explanation was that she had gone with her husband on a vacation required by his health); that her home is approximately two miles from the property in question; and, that the decision on the part of the City Council not to appeal was made in good faith. There was no evidence offered to support her allegation that "the value of her property . . . would be substantially diminished by the proposed industrial development."

We hold, *on these facts,* that appellant's motion to intervene, after trial and entry of

judgment, was not timely made (Cf. *Stallings v. Conn,* 74 F.2d 189 (5th Cir. 1934)); that her protest amounts only to a "dissent" from the Council's good-faith decision not to appeal (*Hobson,* supra, 44 F.R.D., l. c. 30); that there is no showing that her interests were inadequately represented; that "furtherance of justice" does not require her intervention (*Zeitinger v. Hargadine-McKittrick Dry Goods Co.,* 298 Mo. 461, 472, 250 S.W. 913, 916 (banc 1923)); and, that the trial court reasonably could have found that she gambled on the outcome of the proceedings before judgment and now seeks to compel a retrial of the original issues. (*Lockwood v. Hercules Powder Co.,* 7 F.R.D. 24, 28 (W.D.Mo.1947)). Compare also *Eakins v. Burton,* 423 S.W.2d 787, at l. c. 790–791 (Mo.1968), wherein this court said: "We also have the view that the motion of Western was not timely. It had notice concerning all the proceedings, including the fact that judgments were to be taken. Western apparently assumed that defendant would make a vigorous defense and that it could safely refuse to defend under the circumstances. As we view the situation Western took a calculated risk that defendant would contest the claims of plaintiffs and, when he did not do so, sought to have the court give it another chance to defend. We think it is obvious, under these circumstances, that to be timely the motion to intervene should have been filed before the judgments were entered. * * * Western also contends that it should have been permitted to intervene under Civil Rule 52.11(b), which provides for permissive intervention, and that the court abused its discretion in failing to permit it to intervene. That subdivision of the rule also requires that the application be *timely.* Our ruling to the effect that Western's motion was not timely is sufficient to dispose of this contention and it is therefore ruled adversely to Western."

The order of the trial court, denying the motion to intervene, is affirmed; and the appeals are dismissed.

1. Our rule 41.03 is worded the same.
   And it is expressly stated in *Eakins v. Burton,* 423 S.W.2d 787, 790 (Mo.1968), that our rule

HOLMAN, HENLEY and DONNELLY, JJ., concur.

SEILER, C. J., dissents in separate dissenting opinion filed.

BARDGETT and FINCH, JJ., dissent and concur in separate dissenting opinion of SEILER, C. J.

SEILER, Chief Justice (dissenting).

Appellant sought to intervene as a matter of right under rule 52.12(a)(2) and, in the alternative, permissively under rule 52.-12(b)(2). She is denied, largely on the basis her application was not timely and on the assumption her house is too far away from the property in question for her to be adversely affected, and hence she lacks the necessary standing or interest. I am unable to agree. It seems to me the application was timely and that appellant has enough interest to warrant her being permitted to intervene.

The yardstick of timeliness is not one which mechanically operates according to the stage of the proceedings, but rather is one which is applied in light of the policy which prompts the requirement of timeliness. The yardstick is a flexible one.

In *McDonald v. E. J. Lavino Co.,* 430 F.2d 1065, 1074 (5th Cir. 1970), the court observed as follows:

" 'Timeliness' is not a word of exactitude or of precisely measurable dimensions. The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice. The rule has its permissive aspects, and while we do not dislodge nor denigrate the trial court's discretion in matters of intervention, we must view its exercise in the liberal atmosphere of the Rules of Civil Procedure, which are to be construed 'to secure the just, speedy, and inexpensive determination of every action.' Rule 1, Fed.R.Civ.P.[1] In the present case

on intervention " . . . should be construed liberally to permit broad intervention."

*McDonald* seems to assume that the requirement of timeliness is a tool of retribution which can be used to punish a would-be intervenor for allowing time to pass before moving to intervene. We cannot agree with such a view. We think it is correct to say that since 'the privilege of intervention stems from a desire to protect the rights of unrepresented third parties, it becomes apparent that the timely application requirement under Rule 24 was not intended to punish an intervenor for not acting more promptly but rather was designed to insure that the original parties should not be prejudiced by the intervener's failure to apply sooner.' Note, The Requirement of Timeliness Under Rule 24 of the Federal Rules of Civil Procedure, 37 Va.L.Rev. 863, 867 (1951). Accordingly, it has been the traditional attitude of the federal courts to allow intervention 'where no one would be hurt and greater justice would be attained.'"

In 7A Wright & Miller, Federal Practice and Procedure § 1916 at 573–83 (1972), we find this comment on the federal rule, of which ours is a rescript:

"Even though the requirement of timeliness applies to both intervention of right and permissive intervention, a different standard is used, depending on the type of intervention sought, in determining what is timely. Since *in situations in which intervention is of right* the would-be intervenor may be seriously harmed if he is not permitted to intervene, courts should be reluctant to dismiss a request for intervention as untimely, even though they might deny the request if the intervention were merely permissive.

"In the exercise of its discretion the court of course will consider the time element itself but this should not be judged in a vacuum. The requirement of timeliness is not a means of punishment for the dilatory and the mere lapse of time by itself does not make an application untimely. The court must consider whether the applicant was in a position to seek intervention at an earlier stage in the case and must weigh the lapse of time in the light of all the circumstances of the case.

"The most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case . . . 'or substantially interfere with the orderly processes of the court.' If neither of these results would occur the mere fact that judgment already has been entered should not by itself require an application for intervention be denied. Thus although the cases 'tend to involve unique situations' and to require 'a close examination of all the circumstances of the case,' *in a significant number of cases intervention has been allowed even after judgment. One reason for allowing this is so that the intervenor can prosecute an appeal that the existing party has determined not to take*" (emphasis supplied).

In 3B, J. Moore, Federal Practice, Sec. 24.13[1] at 526–27 (2d ed. 1975) it is said, "Intervention after judgment is unusual and *not often granted. It may be allowed, however, where it is the only way to protect the intervenor's rights; e. g., where the intervenor would be bound by the judgment and the party purporting to represent him fails to appeal . . . .*"

Thus, we can see that the requirements are interrelated. If a party is barred from entering the proceeding earlier because his interest is "adequately represented" (as is the case under both our and the federal rule), then the timeliness must relate to the earliest time when that interest is no longer represented.

Was the appellant's interest adequately represented by existing parties prior to the time she sought to intervene? This has two aspects. Not only must the representation be inadequate for intervention to be allowed, but conversely, if it *is* adequate, then intervention is barred by the express language of the rule. Note that the right to intervention is phrased in terms of being able to do so "unless the applicant's interest is adequately represented by existing par-

ties", see rule 52.12(a)(2). Moore, supra, § 24.09–1[4] at 314 observes in regard to the "unless" clause: "As noted by Justice Stewart, the 'requirement of inadequate representation by existing parties as a precondition of the right to intervene . . . is obviously an adaptation of the similar standard contained in the former [rule]' . . . ", and on this the same text states at § 24.08[2] at 181: "Even though the applicant might be bound by the judgment, he could not intervene as of right if he was in fact adequately represented by an existing party to the action." Here, appellant did have notice of the proceedings below, but the case was being handled by the city council at the time and there is a presumption of adequacy when the cause of action is carried forward by a governmental authority, *Archer v. United States,* 268 F.2d 687, 689 (10th Cir. 1959); *In re Engelhard & Sons Co.,* 231 U.S. 646, 651, 34 S.Ct. 258, 58 L.Ed. 416 (1914); *City of New York v. New York Telephone Co.,* 261 U.S. 312, 316, 43 S.Ct. 372, 67 L.Ed. 673 (1923). Appellant therefore was not gambling on the outcome of choosing not to intervene, as suggested in the principal opinion, because, as shown, she could not have intervened while the city was still in the case. *Lockwood v. Hercules Powder Co.,* 7 F.R.D. 24 (W.D.Mo.1947), cited in the principal opinion, involved a situation where an employee sought payment of wages due for overtime work by himself and all other "employees similarly situated." Before trial, the district court struck the pleading on the behalf of the fellow employees because it was "devoid of facts supporting the conclusions" that they had such claims, at 27. The court noted that these employees could join as plaintiffs or intervenors before trial, at 28. Because they were being expressly invited to do so then, the court suggested that they would probably be unsuccessful if they sought to intervene after judgment, pointing out that otherwise the permissive intervenor would be allowed to "gamble on the outcome" and require a retrial of the original issue. These facts distinguish *Lockwood* from the case at hand. Here, appellant has not been invited to enter and then declined. In con-trast, she was not able to intervene so long as the city of Bridgeton was diligently prosecuting one and defending the other of the two cases, *Pellegrino v. Nesbit,* 203 F.2d 463, 466 (9th Cir. 1953), which means under the facts before us that she could not enter at any time earlier than after judgment.

Once the decision not to appeal was made, her interest was immediately impaired, *Nuesse v. Camp,* 128 U.S.App.D.C. 172, 385 F.2d 694, 704 (1967); *Wolpe v. Poretsky,* 79 U.S.App.D.C. 141, 144 F.2d 505, 507 (1944), cert. denied 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621 (1940). This is because the judgment overturning the zoning would, if not appealed, operate to bind her, *Wolpe v. Poretsky,* supra, inasmuch as her interest had been sufficiently represented to that point by the city council. The very fact of deciding not to appeal represents an inadequacy of representation, *Cooper v. Albuquerque City Commission,* 85 N.M. 786, 518 P.2d 275, 279 (1974), so that she then becomes eligible to intervene, as she has no one upon whom she could rely for representation on appeal. "Intervention may be allowed after a final decree where it is necessary to preserve some right which cannot otherwise be protected . . . Here . . . the right of appeal." *Wolpe v. Poretsky,* supra, at 508. Under the facts of the present case, appellant's intervention was timely since it was sought as soon as her rights were prejudiced.

I believe the situation presented here is rather similar to one which came before the supreme court of Kansas. A county attorney defended the board of county commissioners' refusal to rezone plaintiffs' property. Plaintiffs won judgment in the trial court and adjoining landowners (who were opposing rezoning) then sought to intervene in order to appeal. The supreme court held the trial court should have allowed the intervention, stating:

"Until such time as the county attorney announced that he was not going to file a motion for a new trial and appeal the case if a new trial was denied, the adjoining landowners had been adequately represented by the Board of County Commissioners.

On being informed of the defendant's intentions, the adjoining landowners filed their motion to intervene and attached thereto was a motion for new trial all filed within ten days after judgment. The requirement for 'timely application' to intervene has no application . . . until such time as adequate representation ceases." *Moyer v. Board of County Commissioners,* 197 Kan. 23, 415 P.2d 261, 264 (1966).

In *Stallings v. Conn,* 74 F.2d 189 (5th Cir. 1934), cited in the principal opinion, the court was dealing with the old federal equity rules in effect in 1934.[2] Likewise, in *Zeitinger v. Hargadine-McKittrick Dry Goods Co.,* 298 Mo. 461, 250 S.W. 913 (banc 1923) also cited in the principal opinion, this court in 1923 had neither rules nor statutes on intervention. Here, we have a clear rule and a modern body of case law, Missouri and federal. By referring to these aids, we can see that the appellant here was timely in her attempt to intervene. The facts here are in marked contrast to those in *Eakins v. Burton,* supra, fn. 1, also cited in the principal opinion. There the movant, Western, a liability insurance carrier, would have had an opportunity again to litigate the issues of the case (at the time plaintiffs sought to collect on the judgments against the insured by execution and garnishment), so that denial of intervention was of no great moment. Here, appellant would clearly be bound and, thus, "disposition of the act may as a practical matter impair or impede [her] ability to protect" her interest. Rule 52.-12(a)(2). Further, Western there had been requested to defend a party at the very outset of the proceeding below, but refused, which differs materially from appellant's situation.

Defendants assert they have a right to rely on the judgment and decree, it being apparent, they say, that appellant is interested in "delaying and impeding" defendants. It is true that if appellant is permitted to intervene and appeal, there would need be consideration of the appeal on the merits. However, the transcript and exhibits are already here and appellant is not seeking an opportunity for a further hearing to offer more evidence or to raise any new issues, but is asking that the existing residential zoning and the referendum repeal of the industrial zoning be upheld on the present record. If appellant is permitted to intervene, this court has before it all that is needed to decide the case on the merits, so that there is no interference with orderly process, particularly when we consider that the question on the merits involves the reasonableness of a municipal zoning classification, which the courts are required to uphold if "even fairly debatable", *Flora Realty & Invest. Co. v. City of Ladue,* 362 Mo. 1025, 246 S.W.2d 771, 777 (banc 1952), app. dis'd 344 U.S. 802, 73 S.Ct. 41, 97 L.Ed. 626 (1952). Appellant's failure to move earlier to intervene is not claimed to have prejudiced defendants in the trial or have caused defendants to leave out something they would otherwise have offered below. If appellant is entitled to intervene she is entitled to appeal and the fact that this means the defendants must carry the battle one step further is incidental, not prejudicial. An appeal taken in any case means the winner in the trial court must exert himself further to preserve his victory.

Defendants also assert appellant lacks sufficient interest to intervene and the principal opinion rests to a large extent on the fact there was no evidence offered to support her allegation that the value of her property would be substantially diminished by the proposed industrial development. But it does not seem to me that this is sufficient to warrant denying her intervention when we consider the personal stake that she has in the outcome of the litigation. This same appellant was one of the

---

2. Equity Rule 37, promulgated in 33 S.Ct. xxviii–xxix, effective in 1913, and abrogated when the Federal Rules of Civil Procedure were promulgated in 1938, is worded in a vastly different manner than our rule 52. It does not mention, for instance, timeliness, impairment of claim, or inadequacy of representation. In the *Stallings* case, "no excuse for delay in making application" was shown, 74 F.2d at 191, and the discretionary denial of a petition for leave to intervene was held to be not appealable.

party plaintiffs in *Coalition for Environment v. Volpe,* 504 F.2d 156 (8th Cir. 1974), which involves exactly the same Linclay Development Corporation and Earth City Corporation project as that in the present case. Appellant, other individuals, and several nonprofit corporations composed of various member organizations and individual members challenged the Earth City project. They challenged the urban levee and flood protection system and contended that federal authorization was a precondition to both improvements. They also contended that the project involved was subject to the National Environmental Policy Act and thus required an environmental impact statement. The plaintiffs were seeking a declaration that the federal defendants must assume jurisdiction to assure compliance and plaintiffs sought an injunction against the private defendants to stop the work until they obtained the necessary permits and to restore the tract. The trial court took the position that the appellant was not a proper party to bring any law suit, saying she had not suffered injury and that there was nothing more involved than her personal displeasure. Her claims were substantially the same as those set forth on pages 4 and 5 of the principal opinion herein.

On appeal the court of appeals reversed the district court's granting of summary judgment against appellant and the issue discussed was whether or not she had the necessary standing. The court of appeals held that she did; that the concept of "injury in fact" includes more than economic harm and that the fact that particular environmental interests are shared by the many rather than the few does not make them less deserving of legal protection through the judicial process, 504 F.2d at 166. The court said that plaintiffs' claims constituted more than mere displeasure. It said there were particularized injury claims stemming in various ways from the loss of open space and the changes occasioned or threatened by the project, 504 F.2d at 167. The court referred to loss of viewing open space, loss of natural environment, increased automobile traffic, increase in noise and air pollu-

tion; that these were statements of specific injury experienced by ascertainable individuals who reside near or pass through the affected area. At 504 F.2d 168, the court states: "The court is not to consider the weight or significance of the alleged injury, only whether it exists. '[A]n identifiable trifle is enough for standing to fight out a question of principle; the trifle is the basis for standing and the principle supplies the motivation.'" The court pointed out that plaintiffs' off-tract interest in the land may very well be impaired and such injury is adequate to give standing to challenge of the proposed project.

The same is no less true in the present case.

The record shows that the city of Bridgeton, population 18,000, consists of 10,263 acres of which 3,718 are developed and 1,693 are single family residential. Earth City, a substantial part of which lies in Bridgeton, is a 1,700 acre development. It is to be a combination multi-family, high density residential, commercial and light industrial city. If it were in a rectangle it would cover an area one mile wide and nearly three miles long. Such a mammoth development would greatly affect the vital interest of every Bridgeton homeowner. It would reshape the very nature of Bridgeton and its neighbors. The purposes of our zoning statutes, as set forth in § 89.040, RSMo 1969, are to provide adequate light and air, prevent overcrowding of land and lessen congestion, all of which are consistent with appellant, as a resident of the community, having a legitimate standing to object to the substantial change in the uses permitted of the Bridgeton land by the decision of the trial court, once appellant's representative, the city council, elects to get out of the case. In *McDermott v. Village of Calverton Park,* 454 S.W.2d 577, 581–2 (Mo. banc 1970), the court pointed out the unique situation of the "bedroom" municipalities (of which Bridgeton undoubtedly is one) which surround St. Louis, existing primarily for residential purposes, rather than commercial or manufacturing. In *State ex rel. Housing Authority of St. Louis v. Wind,*

337 S.W.2d 554, 558 (Mo.App.1960), the court said that considering that zoning ordinances are predicated upon protection of public health, safety, morals and welfare, " . . . it might well be argued that every resident in the community would, in some measure, have an interest in protecting the issuance of a building permit issued in violation of the applicable ordinance." The court cited *O'Connor v. Board of Zoning Appeals of Town of Stratford,* 140 Conn. 65, 98 A.2d 515, 518 (1953), where an "aggrieved" person was held to include " . . . at least any landowner or resident within the city whose situation is such that the decision of the board may adversely affect him in the use of property owned or occupied by him in some manner within the scope of the purposes of the zoning ordinance."

We are unnecessarily restrictive and apprehensive when we deny intervention to the appellant. It is contra to our declared policy of liberal construction of the rule looking toward broad intervention. I would permit her to intervene and would then decide the appeal on the merits. Therefore, I respectfully dissent.