Kelvin UNDERWOOD, Respondent,

v.

ST. JOSEPH BOARD OF ZONING AD-
JUSTMENT and City of St. Joseph,
Missouri, Respondents,

Sharon Kennedy, Appellant.

No. WD 73912.

Missouri Court of Appeals,
Western District.

March 6, 2012.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 1, 2012.

Application for Transfer
Denied July 3, 2012.

Edwin H. Smith and Sharon Kennedy, St. Joseph, MO, for Appellant.

George "Scott" Murray, St. Joseph, MO, for Respondent Underwood.

Lisa M. Robertson, St. Joseph, MO, for Respondents Board of Zoning Adjustment and City of St. Joseph, MO.

Before Division Three: KAREN KING MITCHELL, Presiding Judge, and JAMES M. SMART, JR., and GARY D. WITT, Judges.

KAREN KING MITCHELL, Presiding Judge.

Respondent, Kelvin Underwood, applied for a zoning variance in order to complete construction of a detached garage on his property in excess of the size restrictions currently in place by St. Joseph zoning ordinances. The Board of Zoning Adjustment (BZA) denied Underwood's request, and he sought judicial review in the circuit court, with the city of St. Joseph (City) and the BZA as named respondents. The circuit court reversed the BZA's decision and remanded with instructions that the BZA grant Underwood's requested variance. City and BZA chose not to appeal the circuit court's decision. Appellant, Sharon Kennedy, a nearby landowner, filed an appeal from the circuit court's decision to this court.[1] For the reasons discussed below, we dismiss this appeal on the ground that Kennedy has no standing to appeal from a lower court decision wherein she was not a party to the action.

## Factual Background

Underwood submitted construction plans for a building permit for a detached garage, measuring 1,328 square feet, to City for approval. City subsequently approved the plan and design, and Underwood obtained a building permit for the detached garage.

Approximately three months later, when the structure was 80% complete, City received an anonymous complaint about the garage and issued a stop work order because the garage actually measured 1,427 square feet, rather than the 1,328 square feet authorized by the permit. St. Joseph City Ordinance section 31.050(e)(10)b.4 limits the size of a detached garage to "an area no greater than 30% of the rear yard area behind the principal structure." Based on the size of Underwood's yard, the garage could be no larger than 1,035 square feet.[2] City advised Underwood to either obtain a demolition permit or seek an area variance with the BZA. Underwood chose to seek an area variance.

In response to Underwood's variance request, City mailed certified letters to adjacent landowners (including Kennedy) and published notice of a public hearing on the

---

1. Due to the procedural posture of this case and the fact that we review the BZA's decision, rather than the circuit court's, Kennedy filed the appeal but Underwood filed the appellant's brief, as he was the aggrieved party to the BZA's decision.

2. Based on the evidence regarding the size of Underwood's yard (3,450 square feet), 1,035 square feet was the maximum permissible area of a detached garage. City, however, in its report to the BZA indicated that Underwood's variance was from 1,050 feet to 1,427 square feet. It is unclear how the 1,050–square–foot figure was reached.

variance request ("initial hearing"). Before the initial hearing, City acknowledged that it erroneously issued the building permit for the 1,328–square–foot design contrary to St. Joseph City Ordinance and offered to pay 76% of Underwood's cost to downsize the garage, as that was the portion of excessive square footage attributable to City's error. City maintained that Underwood was responsible for the additional 99 square feet that the structure actually exceeded the area allowed by the building permit. Also before the initial hearing, the BZA received written comments from three adjacent landowners regarding Underwood's requested variance. One of the comments was from Kennedy, expressing her opposition to the variance based upon her concern that "the garage does not fit the character of the neighborhood due to its size and construction material." Kennedy indicated her belief that "[t]his may adversely affect property values in the neighborhood."

At the initial hearing before the BZA, testimony was provided by Underwood and his wife, their contractor, and City staff. No one appeared to testify in opposition to the variance request. The variance was denied. Underwood thereafter filed petitions for judicial review, writ of certiorari, and declaratory judgment with the circuit court to review the BZA's decision. Underwood was identified as "petitioner," and City and BZA were identified as "respondents."

On April 4, 2011, the circuit court entered a judgment reversing the BZA's denial of the variance and remanding the case with orders that the variance request be granted. At a second BZA hearing held May 3, 2011, one day before the circuit court judgment became final, City rec-ommended that the BZA adopt the circuit court's findings of fact and conclusions of law. Kennedy appeared at this second hearing and argued against granting the variance request based upon her previously stated reasons, and the additional reasons that she believed "the [circuit] court was without authority to issue [its] order," and that "the judge may not substitute his judgment for that of the zoning board." At the second hearing, the BZA adopted the circuit court's findings, and one week later, Kennedy filed a notice of appeal in this court challenging the circuit court's judgment.[3]

## Analysis

Before we can consider the merits of this appeal, we must first address the issue of standing. Standing is a precursor to the right to appeal. *State ex rel. Parsons v. Bd. of Police Comm'rs of Kansas City*, 245 S.W.3d 851, 854 (Mo.App. W.D. 2007). If a party does not have standing, we must dismiss the appeal. *Id.* Underwood filed a motion to dismiss this appeal on the ground that Kennedy lacks standing, as she was not a party to the decision below. We agree with Underwood and dismiss this appeal.

Article V, section 18 of the Missouri Constitution provides that all final judgments of any administrative body "shall be subject to direct review by the courts as provided by law" and "[u]nless otherwise provided by law, administrative decisions ... subject to review under this section ... shall be reviewed in such manner and by such court as the supreme court by rule shall direct...."

Section 89.110,[4] governing decisions made by city boards of zoning adjust-

---

3. No appeal was taken from the second BZA decision.

4. All statutory references are to RSMo 2000, updated through the 2010 Cumulative Supplement, unless otherwise noted.

ment, indicates that any person aggrieved by a board's decision may seek relief from that decision in the circuit court where the property is located. The statute then addresses at some length the procedure for challenging a decision of a board of zoning adjustment in the circuit court. *Id.* The statute also directs the potential outcomes at the circuit court level. *Id.* ("The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review."). The statute contains no provision regarding appellate review following the circuit court's entry of judgment. Therefore, Supreme Court rules apply. Rule 100.02 provides for judicial review of administrative decisions in the appellate courts. The rule specifically refers to *parties:* "The petition for review or notice of appeal shall specify the *party* seeking review, the decision sought to be reviewed, and a concise statement of the grounds on which jurisdiction is invoked." Rule 100.02(c) (emphasis added). Additionally, section 512.020, governing appeals generally, provides that "[a]ny *party* to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction . . . ." (emphasis added).

Here, Kennedy was not a party to the cause below in the circuit court (Underwood's appeal from the BZA decision following the initial hearing). Thus, she has no standing to seek an appeal therefrom. *F.W. Disposal South, LLC v. St. Louis Cnty. Council,* 266 S.W.3d 334, 338 (Mo. App. E.D.2008) ("Only a party has standing to attempt to set aside or appeal from a judgment.").

■ Kennedy sets forth two reasons why she has standing despite her non-party status before the court below. First,

she argues that section 536.100 of the Missouri Administrative Procedures Act expressly confers standing upon her as a "person . . . aggrieved by a final decision in a contested case." And second, she argues that even if the plain language of section 536.100 does not confer standing upon her, City's and BZA's standing should be deemed to have transferred to her for purposes of appeal because: (1) she had no right to intervene in the circuit court proceeding prior to judgment in that City and BZA represented her interests, and (2) that City and BZA acted in an allegedly arbitrary and capricious manner in choosing not to pursue the appeal, and therefore she would have had the right to intervene post-judgment, but she was effectively denied the opportunity to intervene at that time because she did not learn of the decision not to appeal until 24 hours before the circuit court's decision became final. We find both arguments unavailing.

## A. Section 536.100 does not confer standing to non-parties on appeal in the appellate courts.

Section 536.100 provides, in pertinent part, that:

Any person who has exhausted all administrative remedies provided by law and who is aggrieved by a final decision in a contested case, whether such decision is affirmative or negative in form, shall be entitled to judicial review thereof, as provided in sections 536.100 to 536.140, unless some other provision for judicial review is provided by statute. . . .

§ 536.100.

Kennedy argues that section 536.100's reference to "judicial review" contemplates review in the appellate courts, and since the statute refers to "any person," she was not required to be a named party below in

order to appeal the circuit court's judgment. We disagree.

First, Rule 100.01 directly refutes Kennedy's claim insofar as it provides that "[t]he provisions of sections 536.100 through 536.150, RSMo, shall govern procedure in *circuit courts* for judicial review of actions of administrative agencies ..." (emphasis added). Rule 100.02, on the other hand, addresses judicial review of administrative decisions in the appellate courts, and, as noted above, it refers only to parties as opposed to "any person."

The second flaw in Kennedy's argument is that it does not appear that section 536.100 is applicable to this situation at all, considering that section 89.110 provides its own mechanism for judicial review, thus falling under the "unless some other provision for judicial review is provided" exception to section 536.100. Under section 89.110's provisions, Kennedy, had she been aggrieved, may have been entitled to seek review by the circuit court of the BZA's initial decision, arguing that the decision was illegal in whole or in part.[5] But, as noted above, section 89.110 is silent regarding appellate review following the circuit court's decision. "Ch[apter] 536 ... supplements RSMo Ch[apter] 89 where Ch[apter] 89 does not specifically deal with a particular question." *Drury Displays, Inc. v. Bd. of Adjustment of City of St. Louis,* 781 S.W.2d 201, 203 n. 1 (Mo.App. E.D.1989). In this situation, Chapter 536 directs that "[a]ppeals may be taken from the judgment of the court as in other civil cases." § 536.140.6. And, as noted above, section 512.020 confers standing only upon *parties* to the cause. Kennedy was not a

party to the cause in the circuit court; thus, she is not entitled to appeal therefrom.

**B. Standing cannot automatically transfer from a named party to a nonparty for purposes of appeal.**

There are generally only two ways to become a party to litigation and thereby acquire standing to appeal: (1) a person can be a named party in the original pleadings, or (2) the person can later be added as a party through joinder or intervention. *See F.W. Disposal,* 266 S.W.3d at 338. "The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled." *Marino v. Ortiz,* 484 U.S. 301, 304, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988). While there may be exceptions,[6] the Supreme Court has indicated that "the better practice is for such a nonparty to seek intervention for purposes of appeal; denials of such motions are, of course, appealable." *Id.*

Rule 52.12, governing intervention, provides in pertinent part:

> Upon timely application anyone shall be permitted to intervene in an action: ... when the applicant claims an interest relating to the property or transaction that is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule 52.12(a)(2).

Kennedy did not seek to intervene below, but nevertheless argues that City's

---

**5.** Similarly, Kennedy may have been entitled to seek review by the circuit court of the BZA's second decision (granting the variance).

**6.** *See, e.g., In Re Foreclosure of Liens for Delinquent Land Taxes by Action in Rem: Man-*

*ager of Revenue of Jackson County, Missouri,* 328 S.W.3d 728 (Mo.App. W.D.2010) (nonparty permitted to file appeal in an in rem action where she was purchaser of property erroneously sold at a tax sale, and the sale was later set aside).

and BZA's standing should automatically transfer to her for purposes of appeal. Kennedy's argument is two-fold. She first argues that she could not intervene under Rule 52.12 before judgment because City and BZA were acting in a representative capacity, "representing the interests of Kennedy and other persons who would be aggrieved if the circuit court reversed the BZA's decision denying Underwood's requested variance," meaning that she could not demonstrate that her interests were not adequately represented by an existing party. She then argues that once City and BZA opted not to pursue an appeal, they were no longer adequately representing her interests, and she was then entitled to intervene under Rule 52.12, but due to the limited amount of time between her learning of the decision not to appeal and the circuit court's decision becoming final, she was effectively precluded from seeking intervention at that time. Thus, she reasons, the only way to adequately protect her interests is for City's and BZA's standing to transfer to her, a non-party to the action below, for purposes of appeal. We disagree.

i. **Ability to intervene before judgment**

█ The primary flaw in Kennedy's argument is that it is premised on speculation; she argues that if she had sought intervention before judgment, the circuit court would have denied it. The problem with her premise is that we do not know what the circuit court would have done because Kennedy failed to file a motion to intervene and plead the necessary facts to establish entitlement to intervention of right. Had she filed such a motion, and had the circuit court denied the motion, then she could have sought an appeal from that denial. *City of Bridgeton v. Norfolk & W. Ry. Co.*, 535 S.W.2d 99, 100 (Mo. banc 1976) (neighboring homeowner allowed to appeal denial of intervention in action brought by city to enjoin construction of railroad spur that was in violation of amended zoning ordinance); *Marino*, 484 U.S. at 304, 108 S.Ct. 586. At that point, we would have the necessary record before us to evaluate whether she should have been entitled to intervene in the action below. But absent that information, we are unwilling to assume that any request for intervention would have been denied.

█ The second flaw in Kennedy's argument is her assumption that the circuit court would have determined that Kennedy's interests were already adequately represented by City or BZA. "The determination of whether a proposed intervenor's interest is adequately represented by an original party to an action usually turns on whether there is an identity or divergence of interest between the proposed intervenor and the party." *Alsbach v. Bader*, 616 S.W.2d 147, 151 (Mo.App. E.D. 1981). "Another factor to be considered is how effective the representation will be in light of a legal disability or the trial strategy of the party which would preclude the party from presenting the claims or defenses of the proposed intervenor." *Id.* While certainly Kennedy, City, and BZA were on the same side of the dispute, that, alone, would not preclude intervention. *See Smuck v. Hobson*, 408 F.2d 175, 181 (D.C.Cir.1969) (it is not necessary that "the interests of the intervenor and his putative champion already a party be wholly adverse.").

Kennedy argues that under Missouri case law, neighboring property owners have no right to intervene in circuit court review proceedings when a zoning board is adequately representing their interests; particularly where, as here, the zoning board is merely enforcing an ordinance. In support of this proposition, Kennedy

cites two cases: *State ex rel. Dolgin's, Inc. v. Bolin*, 589 S.W.2d 106, 108–09 (Mo.App. W.D.1979); and *Landolt v. Glendale Shooting Club, Inc.*, 18 S.W.3d 101, 104 (Mo.App. E.D.2000). But neither case stands for the broad proposition that zoning authorities generally should be found to adequately represent the interests of neighboring homeowners.

In *Dolgin's*, this court affirmed the circuit court's denial of several homeowners' motion to intervene because the homeowners failed to demonstrate that their interests were not adequately represented by the existing parties. 589 S.W.2d at 108. In other words, *Dolgin's* involves a failure of proof and does not establish the general rule that zoning boards adequately represent the interests of neighboring homeowners. *Landolt* is even less relevant because *Landolt* did not involve a municipality or a zoning board at all. In *Landolt*, the denial of neighboring landowners' motion to intervene as of right in a nuisance action was affirmed where the prospective intervenors failed to allege that *other landowners* did not adequately represent their interests. 18 S.W.3d at 104.

Not only are we unpersuaded by the cases cited by Kennedy, but also we note that other cases allow or imply that a homeowner may be able to intervene in a case involving a zoning board, if the motion to intervene is timely. *See State ex rel. Algonquin Golf Club v. Lewis*, 395 S.W.2d 522, 524–25 (Mo.App.1965) (allowing nearby landowners to intervene as *respondents* in the circuit court based upon their interest as nearby landowners); *City of Bridgeton*, 535 S.W.2d at 101–02 (finding untimely a neighboring homeowner's motion to intervene after judgment although the zoning authority failed to appeal). While noting the holding in *Algonquin*, Kennedy argues that it no longer applies because

*Algonquin* was decided under a former version of Rule 52.12 that allowed intervention of right when representation of the applicant's interest was "or may be" inadequate; whereas the current rule no longer contains the "may be" language. But it has already been determined that "the change in language should not change the quantum of the applicant's burden. A showing that the applicant *may* be inadequately represented should support mandatory intervention." *Alsbach*, 616 S.W.2d at 151 n. 5 (emphasis added). Thus, *Algonquin* is still good law.

 We acknowledge that there is a presumption that a governmental entity adequately represents the interests of citizens at large. *City of Bridgeton*, 535 S.W.2d at 104 (Seiler, C.J., dissenting); *see also Wolpe v. Poretsky*, 144 F.2d 505, 507 (D.C.Cir.1944) (acknowledging that a municipality or a zoning board may adequately represent interests of property owners). But that does not mean that a governmental entity adequately represents the unique interest of each individual citizen or that a governmental entity is operating in a representative capacity as to the interests of individual citizens. "Adjoining property owners in a suit to vacate a zoning order have such a vital interest in the result of that suit that they should be granted permission to intervene as a matter of course unless compelling reasons against such intervention are shown." *Wolpe*, 144 F.2d at 508. Furthermore, "[i]n Missouri, the general rule has always been that the [intervention rule] should be liberally construed to permit broad intervention." *State ex rel. St. Joseph, Mo. Ass'n of Plumbing, Heating and Cooling Contractors, Inc. v. City of St. Joseph*, 579 S.W.2d 804, 806 (Mo.App. W.D.1979). Thus, we cannot conclude that Kennedy would have been precluded from intervening before

judgment as a matter of right pursuant to Rule 52.12.

The final flaw in Kennedy's argument is her assumption that the only method by which she could have intervened was by intervention of right pursuant to Rule 52.12. Section 536.110.3 expressly vests the circuit court with the discretion to "permit other interested persons to intervene" in the judicial review of an administrative agency's decision.[7] Kennedy never asked the court below to exercise this discretion in her favor.

In short, Kennedy simply never gave the circuit court the opportunity to determine whether intervention was appropriate. Thus, we cannot determine that Kennedy would have been unable to intervene before judgment.

### ii. Effect of decision not to appeal

■ Kennedy next argues that City's and BZA's decision not to appeal was arbitrary and capricious because they had valid grounds for appeal; specifically, she argues in her suggestions in opposition to Underwood's motion to dismiss that the circuit court was without authority to render the judgment it rendered based upon the applicable statutes. Kennedy appears to argue that because City and BZA acted arbitrarily and capriciously, she would have had the right to intervene at the trial court post-judgment, but she was effectively prevented from doing so because she did not learn of the trial court's judgment until 24 hours before it became final. Thus, Kennedy's argument turns on whether City and BZA acted arbitrarily and capriciously in choosing not to appeal the circuit court's decision.[8]

■ Generally, whether a party acted arbitrarily and capriciously is relevant to the question of whether that party continues to adequately represent the interests of non-parties for purposes of intervention under Rule 52.12. *Dolgin's*, 589 S.W.2d at 110. Because Kennedy made no attempt to intervene at any time, the question of whether City and BZA acted arbitrarily and capriciously was not addressed below, and no record was developed. We have held that the mere failure to appeal, alone, is insufficient to establish that an existing party inadequately represented a would-be intervenor's rights. *Id.* Kennedy asks us to conclude otherwise where the record demonstrates that there were adequate grounds for an appeal. We reject Kennedy's argument that the existence of valid grounds for appeal, alone, establishes that the decision not to appeal was arbitrary and capricious as a matter of law.

The issue of whether City and BZA acted arbitrarily and capriciously was not raised below and is not properly before this court. If Kennedy has an affirmative claim against the City and/or BZA for failure to enforce a city ordinance, or a claim against Underwood for violation of a city ordinance, she would have to raise such claims in an independent cause of action. Her appeal as a non-party is simply not the proper avenue for relief.

In sum, because Kennedy was not a party to the cause below, she has no standing to appeal the circuit court's decision. "Regardless of the merits of appellants' claims, without standing, the court cannot entertain the action." *Pace Const. Co. v. Missouri Highway & Transp. Comm'n,*

---

7. As noted above, Chapter 536 supplements Chapter 89 where Chapter 89 does not specifically deal with a particular question. *Drury,* 781 S.W.2d at 203 n. 1.

8. Because we find that we cannot conclude that City and BZA acted arbitrarily and capri-

ciously, we need not reach the issue of whether Kennedy received late notice of the decision not to appeal and whether the timing of that notice effectively deprived her of the opportunity to attempt post-judgment intervention.

759 S.W.2d 272, 274 (Mo.App. W.D.1988) (quoting *Champ v. Poelker*, 755 S.W.2d 383, 386–87 (Mo.App. E.D.1988)). Thus, this appeal is dismissed.[9]

**C. Kennedy's appeal will not be construed as a writ petition.**

Kennedy alternatively argues that if we find the appeal to be improper, we should treat her appeal as a petition for a writ of mandamus against the circuit court and BZA. We decline to do so.

"[I]n limited circumstances, [an appellate court] will treat improper appeals as applications for original writs, if writ is available to a movant." *State v. Larson*, 79 S.W.3d 891, 893 (Mo. banc 2002). But Kennedy's appeal is not "improper" in the sense of the word used by the court in *Larson*. In *Larson*, the appeal was improper because there was no final, appealable judgment from which to invoke the court's appellate jurisdiction, nor would there ever have been because the movant received a suspended imposition of sentence, which does not constitute a conviction. And since an appeal lies in a criminal case only from a judgment of conviction, a writ was appropriate because the movant had no adequate remedy by appeal. *Id.* at 893. Here, on the other hand, there is, in fact, a final, appealable judgment. Kennedy is simply not the appropriate person to bring the appeal from that judgment.

In addition, we find that a writ would be inappropriate because Kennedy has failed to demonstrate that she otherwise has no adequate remedy at law to protect her interests in the matter. The essence of Kennedy's claim is the faulty assumption that as a non-party, she will be bound by the circuit court's decision. While the decision below may affect her interests, that is not the same as saying that she is preclusively bound by the judgment so as to prohibit her from asserting any personal cause of action she might otherwise possess. We are not convinced that Kennedy did not have, or does not have, remedies at law available to her to address the grant of the variance or any damages she may have sustained as a result of Underwood's detached garage. Consequently, we will not treat her appeal as a writ application.[10]

### Conclusion

Because Kennedy was not a party to the cause below, she lacks standing to bring this appeal. Underwood's motion to dismiss is granted.

JAMES M. SMART, JR., Judge, and GARY D. WITT, Judge, concur.

---

9. In dismissing this appeal, we take no position as to the propriety of the circuit court's reversal of the BZA's decision and its granting of the variance. We also take no position as to whether the BZA should have granted the variance before the circuit court's decision became final. While both actions may have been subject to legitimate challenge, the posture of this case does not allow us to reach either issue. Likewise, we also do not determine that Kennedy would have been entitled to intervene below if she had so moved; we hold only that she has failed to demonstrate that intervention was not possible.

10. Furthermore, we believe a writ would be inappropriate here because the circuit court is not a party to this appeal; thus, its interests in a writ proceeding would not be represented. *See Jackson v. Stahl Specialty Co.*, 310 S.W.3d 707, 711–12 (Mo.App. W.D.2010) (this court declined to convert the appeal to a writ where not all parties were represented, where appellant should have known appeal was improper avenue for relief, and where procedural difficulties not addressed by the parties were inherent in granting a writ).